UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Lucien H. Groleau

        v.                          Civil No. 10-cv-190-JL
                                     Opinion No. 2011 DNH 166

American Express Financial
Advisors, Inc. (n/k/a Ameriprise
Financial Services, Inc.),
Smith, Sweeney & Associates, Inc.,
Peter H. Smith, and Jeremy Sweeney


**BENCH TRIAL DECISION:**
**FINDINGS OF FACT AND RULINGS OF LAW**

The plaintiff, Lucien H. Groleau, sued the defendants for
specific performance, seeking an order compelling them to engage
in arbitration pursuant to a November 2004 agreement between the
parties.  The defendants, American Express Financial Advisors,
Inc., Smith, Sweeney & Associates, Inc., Peter H. Smith, and
Jeremy Sweeney, admit that they agreed to submit the dispute to
arbitration, but assert that Groleau failed to take steps to
schedule an arbitration before 2010 and that as a result of this
delay, his claims are barred by the doctrines of waiver and
laches.  After the court denied the defendants' motion for
judgment on the pleadings, the court and the parties agreed that
the triable issues in the case were limited and discrete, and the
court ordered an expedited discovery and trial schedule.

The court, which has jurisdiction under 28 U.S.C.
§ 1332(a)(1) (diversity), conducted a bench trial.  Each of the
parties submitted a set of proposed findings and rulings before
trial; the parties also jointly submitted a pre-trial statement
of agreed facts and timeline of events.  At the court's request,
the parties also submitted post-trial memoranda addressing
specific questions pertaining to the doctrine of waiver:
specifically, the question of whether rights can be waived
through inaction, as opposed to affirmative conduct.  With the
assistance of these materials, the court makes the following
findings of fact and rulings of law, see Fed. R. Civ. P. 52(a),
resulting in judgment for the defendants.

The doctrine of laches does not apply to bar Groleau's
claim.  While his assertion of the right to arbitrate was
unreasonably delayed, defendants presented no evidence that the
delay "resulted in unfair prejudice," as is necessary for
application of laches.  Miner v. A & C Tire Co., Inc., 146 N.H.
631, 633 (2001).  The doctrine of waiver, however, bars Groleau's
claim.  In the face of a court order that he submit his claims to
arbitration no later than August 24, 2006, and despite his
repeated assurances that he would promptly arbitrate, Groleau
made no effort to actually schedule an arbitration for a period
of nearly four-and-a-half years.  Groleau's "conduct under the

2

circumstances justif[ies] an inference" that he relinquished the right to arbitrate his claims against defendants, resulting in a waiver of that right. S. Willow Props., LLC v. Burlington Coat Factory of N.H., LLC, 159 N.H. 494, 499 (2009).

### Findings of Fact

1.   Plaintiff Lucien Groleau was employed as director of product development for Nortel Networks, Inc. in Nashville, Tennessee, before retiring in early 2000.  Defendant Smith, Sweeney & Associates, Inc. is a franchise of defendant American Express Financial Advisors, Inc.  In late 1999, while Groleau was still employed at Nortel, defendants Jeremy Sweeney and Peter Smith, financial advisors and employees of the Smith-Sweeney firm, attempted to secure Groleau as a client.  Over the next several months, Groleau met with Sweeney and Smith at least five times to discuss his finances and his retirement plans.

2.   In March 2000, Sweeney and Smith provided Groleau and his wife Paula with a written "Financial Advisory Proposal" that presented recommendations as to how they could best achieve their financial goals.  Groleau maintains that in addition to this written proposal, Sweeney and Smith made oral representations regarding how he could expect his finances to develop if he invested according to their financial advice.  Based upon the

written Financial Advisory Proposal and these oral
representations, Groleau retained Sweeney and Smith and followed
their investment advice.

3.    Within a year of investing with Sweeney and Smith,
Groleau became concerned that his investments were not performing
as well as expected.  Groleau nonetheless continued to follow
Sweeney's and Smith's financial advice.  In 2004, due to mounting
concerns about his investments, Groleau sought the advice of
another financial advisor, Ellen Molnar.  Molnar advised Groleau
that the defendants' financial advice was inappropriate for a
person in his situation and with his retirement-related financial
goals, and advised him to seek legal counsel.

4.    Groleau filed suit against defendants in the Belknap
County Superior Court on July 23, 2004, asserting claims for
fraudulent misrepresentation, negligent misrepresentation,
negligence, breach of fiduciary duty, and negligent supervision.
The defendants removed the action to this court.  See Groleau v.
Am. Express Fin. Advisors, Inc., No. 04-cv-332 (D.N.H. Sept. 1,
2004) (the "2004 Action").

5.    On November 19, 2004, before defendants had responded
to Groleau's complaint, the parties filed a "Joint Motion to Stay
Pending Arbitration" ("Motion to Stay") in the 2004 Action.  The
Motion to Stay provided that the parties "agree and stipulate

4

that a pre-dispute arbitration clause governs all of the claims raised by Plaintiff in [the 2004 Action]" and that "the parties stipulate that Plaintiff shall arbitrate his claim and [the 2004 Action] shall be stayed pending arbitration."  The court (DiClerico, J.) granted the Motion to Stay on December 1, 2004.

6.    Over the next year, neither of the parties filed anything with the court in the 2004 Action.  On December 20, 2005, the court ordered the parties to file a status report as to the arbitration.  Defendants' status report informed the court that on October 4, 2005--nearly 11 months after the filing of the Motion to Stay--defendants' counsel had received a request from Groleau's counsel seeking to schedule the arbitration, and that Groleau's counsel had not returned telephone calls in response. Groleau's status report acknowledged that his counsel had failed to return telephone calls from defendants' counsel but stated that "the matter might be scheduled and heard within the next three months."

7.    On January 4, 2006, Judge DiClerico issued an order noting that "[a]rbitration has yet to occur for reasons that are not readily apparent" and ordering counsel "to take the steps necessary to schedule the arbitration promptly."  For the next four months, Groleau's counsel took no steps toward scheduling the arbitration.  On May 2, 2006, having received no indication

from the parties as to the status of arbitration, the court ordered Groleau to show cause on or before May 25, 2006, why the 2004 Action should not be dismissed for failure to prosecute.

8.    In response, Groleau filed a status report representing that his proposed expert witness was not available to testify at the arbitration and that one of his attorneys had been on medical leave for two months.  Groleau requested "an additional ninety (90) days to conclude the matter with the condition that Plaintiff's counsel report case progress monthly or sooner."  Accordingly, on May 26, 2006, the court issued an order providing that the matter "shall be concluded within 90 days" and that "Plaintiff's counsel shall file a monthly status report."

9.    On June 23, 2006, Groleau submitted a status report indicating that he had retained a new expert and that "[e]fforts to schedule arbitration for mid to late July will occur next week."  The court ordered that "Plaintiff shall file a status report following arbitration."

10.    Despite Groleau's representation that efforts to schedule the arbitration would occur the following week, his counsel did not schedule arbitration then; nor, for that matter, were any efforts to schedule arbitration made at any point prior to August 24, 2006--90 days from the court's May 26, 2006 order

that the matter "be concluded within 90 days."  By order dated
August 24, 2006, the court administratively closed the 2004
Action based upon the "protracted stay."

11.  Neither Groleau nor his counsel had any contact with
defendants or their counsel for the next three years, or took any
steps toward scheduling arbitration during that period.

12.  The attorney who represented Groleau in the 2004
Action (and who continued to represent him with respect to his
claims against defendants for some time thereafter) testified
that the reason Groleau did not seek to schedule any arbitration
for this lengthy period of time was difficulty locating an expert
to testify as to the amount of his damages.  While the court has
no reason to disbelieve this testimony, it does not find the
explanation persuasive to rebut the defendants' waiver defense.
If Groleau and his counsel believed they were sufficiently
prepared to put the matter into suit in this court, it is
difficult to understand why they felt insufficiently prepared to
initiate arbitration.  The applicable burdens and standards of
proof are no less rigorous in U.S. District Court than in
arbitral tribunals.

13.  In 2008, Groleau himself, concerned with the effect on
his case of the lengthy time passage, sought out another
attorney's advice regarding a potential legal malpractice claim

7

against his counsel in the 2004 Action.  That attorney ultimately
sent a demand letter to counsel on Groleau's behalf in 2009.

14.  In March 2010, Groleau finally contacted defendants
seeking to schedule an arbitration.  The defendants declined his
request.

15.  On April 28, 2010, Groleau filed a petition against
defendants in the Belknap County Superior Court, seeking to
enforce the Motion to Stay, which he characterizes as "a binding
agreement [by the parties] to arbitrate their dispute."  That
case was removed to this court on May 13, 2010, commencing the
present action.

16.  To date, Groleau has not initiated an arbitration
proceeding against any of the defendants with any arbitral
tribunal.


**Rulings of Law**

17.  The question presented in this action is whether
Groleau, by failing to contact defendants or otherwise take steps
toward scheduling an arbitration for a three-and-a-half-year
period from August 2006 to March 2010, forfeited the right to
arbitrate his claims against defendants.  Groleau contends that
the November 19, 2004 Motion to Stay, in which the parties
stipulated that "Plaintiff shall arbitrate his claim,"

constituted an enforceable agreement by defendants to submit to arbitration, and that it placed no time limitation on his right to arbitrate.  Defendants, on the other hand, contend that the doctrines of waiver and laches do not permit a party to "sleep on its rights," and that those doctrines apply here to bar Groleau's suit to compel arbitration.

18.  Both waiver and laches are affirmative defenses, see Fed. R. Civ. P. 8(c)(1), and the burden of proving them is on defendants.  See Pennichuck Corp. v. City of Nashua, 152 N.H. 729, 740 (2005) (party asserting laches bears burden of proving that defense); Forbes Farm Partnership v. Farm Family Mut. Ins. Co., 146 N.H. 200, 204 (2001) (proponent of waiver bears burden of proof).  The court will consider these doctrines in turn.

## I.   **Waiver**

19.  "Waiver is the voluntary relinquishment of a known right and may be found from action, inaction, or statements of the [party] by its authorized representatives." U.S. Fid. & Guar. Co. v. Kancer, 108 N.H. 450, 452 (1968).[1]  "A finding of

---

[1] Because Groleau's claim is premised on New Hampshire contract law, New Hampshire law also governs defendants' affirmative defenses to that claim.  See, e.g., Arismendez v. Nightingale Home Health Care, Inc., 493 F.3d 602, 610 (5th Cir. 2007) ("In a diversity action . . . , substantive state law determines what constitutes an affirmative defense."); cf. also

waiver must be based upon an intention expressed in explicit language to forego a right, or upon conduct under the circumstances justifying an inference of a relinquishment of it." S. Willow Props., LLC v. Burlington Coat Factory of N.H., LLC, 159 N.H. 494, 499 (2009). "[P]roof of prejudice is not a requirement of waiver," Amer. Ins. Co. v. Nationwide Mut. Ins. Co., 110 N.H. 192, 195 (1970), and "[w]hether a party has waived its right to arbitration is a question of fact for the trial court to determine from the circumstances of each case," Logic Assocs., Inc. v. Time Share Corp., 124 N.H. 565, 571 (1984).

20. Groleau's entire course of conduct from November 2004, when he agreed to arbitrate his underlying claims against defendants, until March 2010, when he contacted defendants seeking to schedule an arbitration, justifies an inference that he intended to forego the right to arbitrate his claims against defendants.

21. As an initial matter, Groleau has not argued that he is not bound by his attorney's conduct from 2004 to 2010.  In

---

Nat'l Pasteurized Eggs, LLC v. Davidson, 763 F. Supp. 2d 266, 281 n.13 (D.N.H. 2001) (holding that state law governs laches defense to state law claim).  Moreover, the parties agreed orally on the record at trial that New Hampshire law applies.  See Moores v. Greenberg, 834 F.2d 1105, 1107 n.2 (1st Cir. 1987) (where parties agree as to what substantive law applies, a federal court sitting in diversity jurisdiction should comply).

fact, Groleau expressly conceded at trial that his counsel in the
2004 Action was fully authorized to act on his behalf in all
matters respecting his claims against Defendants.  Therefore, the
court need not deal with the issue of whether Groleau's counsel
lacked authority, or exceeded his authority, to bind Groleau as a
matter of agency law.

    22.  By filing suit in 2004, Groleau indicated that he was
prepared to litigate his claims at that time.  Although he agreed
to arbitrate those claims in November 2004, and stipulated in
this court that "Plaintiff shall arbitrate his claim" (emphasis
added), the only action Groleau took in furtherance of
arbitration prior to March 2010 was an October 4, 2005 request to
defendants' counsel to schedule an arbitration.  For the
intervening four-and-a-half years, Groleau made no effort to
schedule or otherwise initiate the arbitration.  None of this
delay was attributable to defendants.

    23.  Despite his virtually nonexistent efforts to schedule
or otherwise initiate an arbitration, Groleau repeatedly
represented to defendants and to the court in the 2004 Action
that arbitration would occur in a timely manner.  In his status
report of January 4, 2006, Groleau claimed that "the matter might
be scheduled and heard within the next three months."  In another
status report on May 25, 2006, Groleau asserted that he needed

only "an additional ninety (90) days to conclude the matter."
And, on June 23, 2006, Groleau indicated that he would commence
"[e]fforts to schedule arbitration for mid to late July" the
following week.  If nothing else, these repeated representations
--though unaccompanied by any action--demonstrate Groleau's
understanding that he needed to act swiftly to pursue his claims.

   24.   Indeed, Groleau was on notice that he needed to act
swiftly to pursue his claims.  On January 4, 2006, Judge
DiClerico, in no uncertain terms, ordered Groleau "to take the
steps necessary to schedule the arbitration <u>promptly</u>" (emphasis
added).  When he failed to do so, the court ordered him to show
cause why the 2004 Action should not be dismissed for failure to
prosecute.  After Groleau reassured the court that he would
"conclude the matter" within ninety days, Judge DiClerico ordered
that the matter "be concluded within 90 days," i.e., by August
24, 2006.

   25.   By failing to take any steps to schedule the
arbitration prior to March 2010, Groleau at best failed to comply
with, and at worst disregarded or violated both the January 4,
2006 and May 26, 2006 court orders.  Groleau's failure to comply
with the court's order that the 2004 Action "be concluded" by
August 24, 2006--not only by failing to schedule and complete
arbitration, but by failing to contact defendants' counsel to do

12

so--justifies the inference that Groleau had, by that date, decided not to pursue arbitration against defendants.

26.  Groleau's conduct up to and including August 24, 2006, is alone sufficient for the court to conclude that he had implicitly waived his right to arbitrate his claims against defendants.  But if there were any doubt about his intention to forego arbitration as of that date, it was erased during the ensuing three-and-a-half years, when neither Groleau nor his counsel had any contact whatsoever with defendants or their counsel.

27.  Groleau's reliance upon Gianola v. Continental Casualty Co., 149 N.H. 213 (2003), for the proposition that his omission to take any action in furtherance of the arbitration cannot constitute a waiver, is misplaced.  Waiver results from a party's "conduct under the circumstances."  Renovest Co. v. Hodges Development Corp., 135 N.H. 72, 79 (1991).  "Conduct" is more than just action.  It includes the entirety of a party's behavior vis-à-vis the other party and the court, and encompasses inaction as well as action, as the New Hampshire Supreme Court has expressly held.  See Kancer, 108 N.H. at 452.

28.  Gianola, moreover, is readily distinguishable.  In that case, after notifying the defendant insurer of a claim under his policy by letters in April and May 2000, the plaintiff filed

13

suit for declaratory judgment in June 2000 contending that the
defendant had waived any right to contest coverage by failing to
respond to either letter.  Gianola, 149 N.H. at 213-14.  The
two-month period of inaction between claim notification and
filing suit in that case differs from Groleau's four-and-a-half-
year period of inaction in this case--inactivity interrupted only
by Groleau's repeated assurances that he would take action within
a certain period of time--by orders of magnitude.

     29.  Groleau's contention that his March 2010 request to
defendants to schedule an arbitration operated as a "retraction"
of his waiver is unpersuasive.  Groleau has identified Oregon and
Delaware law supporting the proposition that a waiver may be
retracted.  But he has cited, and this court has found, no New
Hampshire law suggesting that, even if New Hampshire law
recognizes the "retraction" of a waiver, it would apply to these
facts.  In this situation, the court must predict what the New
Hampshire Supreme Court would do.  Brodeur v. Claremont Sch.
Dist., 626 F. Supp. 2d 195, 216 (D.N.H. 2009).  This task
"demands considerable caution and respect for the well-marked
boundaries of New Hampshire law," and the court must be mindful
of "open[ing] new state-law frontiers."  Franchi v. New Hampton
Sch., 656 F. Supp. 2d 252, 262 (D.N.H. 2009).  The majority rule
is that "a waiver once made cannot be recalled, revived,

14

expunged, or revoked."  31 C.J.S. Estoppel and Waiver § 93.
Absent some indication that the New Hampshire Supreme Court would
follow the minority position advocated by Groleau, rather than
the majority rule, this court will not do so here.

30.  The court rules that Groleau has waived his right to
demand that the defendants submit to arbitration pursuant to the
November 19, 2004 stipulation between the parties.

## II.  **Laches**

31.  "Laches is an equitable doctrine that bars litigation
when a potential plaintiff has slept on his rights."  Premier
Capital, LLC v. Skaltsis, 155 N.H. 110, 118 (2007) (quoting In re
Estate of Laura, 141 N.H. 628, 635 (1997)).  "Laches is not
triggered by the mere passage of time, but may be appropriate
where a suit has been unreasonably delayed and the delay has
resulted in unfair prejudice."  Miner v. A & C Tire Co., Inc.,
146 N.H. 631, 633 (2001).  Whether those two elements have been
proven "is a question of fact for the trial court" that "hinges
upon the particular facts of each case."  Healey v. Town of New
Durham Zoning Bd. of Appeals, 140 N.H. 232, 241 (1995).

32.  For the reasons already noted in its discussion on
waiver, the court finds that Groleau's delay in seeking to
arbitrate his claims against defendants was unreasonable under

15

the circumstances.  Groleau was under court order to "schedule
the arbitration promptly" and to conclude the matter by August
24, 2006, but chose not to do so.  At the same time, he
repeatedly indicated to the court and to defendants that he
intended to arbitrate the matter forthwith.  He nonetheless
neglected to take any of the measures necessary to schedule the
arbitration for over three years following the administrative
closure of the 2004 Action.  The unreasonableness of this delay
is underscored by the fact that Groleau, even before requesting
arbitration dates from defendants in March 2010, began pursuing a
malpractice claim against the attorney who represented him in the
2004 Action.  The malpractice claim was based in part upon that
attorney's delay in pursuing arbitration, and suggests an
awareness on Groleau's part of this unreasonableness.

33.  Notwithstanding Groleau's delay in seeking
arbitration, defendants presented no evidence that the delay
resulted in unfair prejudice.  While Groleau testified that his
memory of his initial meetings with defendants in 2000 was not as
good as it had been in 2006, defendants did not demonstrate that
Groleau's memory of those events was so poor that their defense
would be adversely impacted.  Groleau was able to recall details
of prior discussions with Sweeney and Smith, and testified that
he kept meticulous paper records regarding his communications

with them, some of which were introduced into evidence.  By
contrast, defendants presented no evidence from Sweeney and Smith
indicating that their memories had faded in any way, or any other
evidence of prejudice.

34.  The court does not agree with defendants that
prejudice may be inferred from the passage of time alone.  As
noted, under New Hampshire law "[l]aches is not triggered by the
mere passage of time . . . ."  Miner, 146 N.H. at 633; see also
Skaltsis, 155 N.H. at 118 (noting that laches "is not a mere
matter of time").  Thus, in Miner, the New Hampshire Supreme
Court affirmed the trial court's conclusion that laches did not
apply even where the plaintiff unreasonably delayed bringing
suit, because the defendants failed to show that any actual
prejudice resulted from the delay.  146 N.H. at 633-34.  While
the passage of time may be sufficient to create a presumption of
prejudice under the federal authorities cited by defendants (and
this court takes no position on that issue), those authorities do
not reflect New Hampshire law on this topic.

35.  Because defendants have presented no evidence
establishing unfair prejudice, as is their burden under the
laches defense, Pennichuck Corp. v. City of Nashua, 152 N.H. 729,
740 (2005), that defense is rejected.

17

## Conclusion

Based on the foregoing, the court rules in the defendants' favor on plaintiff's claims.  The clerk shall enter judgment accordingly and close the case.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  October 11, 2011

cc:  James C. Wheat, Esq.
     David Viens, Esq.
     Louis M. Ciavarra, Esq.
     James M. Callahan, Esq.

18